UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID W. T.

                          Plaintiff,

v.                                                      1:20-CV-1638
                                                        (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

AMY CHAMBERS                                     AMY CHAMBERS, ESQ.
14 Corporate Woods Blvd.
Albany, NY 12211

LAW OFFICES OF KENNETH HILLER, PLLC             KENNETH HILLER, ESQ.
 Counsel for Plaintiff
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

LEWIS L. SCHWARTZ, PLLC                         LEWIS SCHWARTZ, ESQ.
1231 Delaware Ave., Ste. 103
Buffalo, NY 14209

U.S. SOCIAL SECURITY ADMIN.                     EMILY FISHMAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before

the undersigned.  (Dkt. No. 14.)  The court has jurisdiction over this matter pursuant to

42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-

motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1964.  (T. 76.)  He completed high school.  (T. 198.) Generally, Plaintiff's alleged disability consists of hernias and right leg injuries.  (T. 197.) His alleged disability onset date is January 1, 2014.  (T. 76.)

### B.    Procedural History

On May 15, 2017, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  (T. 76.)  Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On May 20, 2019, and again on October 3, 2019, Plaintiff appeared before the ALJ, Benjamin Chaykin.  (T. 27-56, 57-66.)  On November 21, 2019, ALJ Chaykin issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 7-23.)  On October 1, 2020, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 12-22.)  First, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 15, 2017.  (T. 12.)  Second, the ALJ found Plaintiff had the severe impairment of hernias.  (*Id.*)  Third, the ALJ found Plaintiff did not have

an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 13.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c) except Plaintiff was limited to occasional climbing ropes, scaffolds, or ladders; frequent climbing of ramps or stairs; frequent stooping, crouching, balancing, kneeling, or crawling; and no concentrated exposure to dangerous hazards such as unprotected heights or dangerous machinery.  (*Id.*)[1]  Fifth, the ALJ determined Plaintiff unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 17-19.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ improperly relied on an incomplete and inconsistent medical consultant opinion which resulted in an RFC finding unsupported by substantial evidence and frustrates meaningful review.  (Dkt. No. 10 at 12-22.)  Second, and lastly, Plaintiff argues the ALJ improperly used selective reading to evaluate evidence and testimony; and erred in finding Plaintiff capable of medium work.  (*Id.* at 22-26.)  Plaintiff also filed a reply in which he deemed no reply necessary.  (Dkt. No. 13.)

### B.    Defendant's Arguments

---

[1]    Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.  20 C.F.R. § 416.967(c).

In response, Defendant makes two arguments.  First, Defendant argues the ALJ appropriately considered the medical opinions in the record.  (Dkt. No. 11 at 12-20.) Second, Defendant argues the ALJ appropriately considered the consistency of Plaintiff's statements about his symptoms with evidence in the record.  (*Id.* at 20-23.)

## III.   RELEVANT LEGAL STANDARD

### B.   Standard of Review

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The "substantial evidence" standard "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[I]t is . . . a very deferential standard of review - even more so than the 'clearly erroneous' standard."  *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).  In particular, it requires deference "to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). It is not the Court's "function to determine *de novo* whether a plaintiff is disabled." *Brault,* 683 F.3d. at 447.  "In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).  "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.' "

*Brault,* 683 F.3d at 448.  The Court "require[s] that the crucial factors in any determination be set forth with sufficient specificity to enable [the reviewing Court] to decide whether the determination is supported by substantial evidence."  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (alterations and internal quotation marks omitted).

### C.   Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a 'residual
> functional capacity' assessment, whether the claimant can perform any of
> his or her past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022).

## IV.   ANALYSIS

### A.   Assessment of Medical Opinions and Prior Administrative Medical Findings

Plaintiff argues the ALJ erred in assessing medical opinions and prior administrative findings in the record.  (Dkt. No. 10 at 12-22.)  First, Plaintiff argues the ALJ improperly relied on the prior administrative finding of a "written consultant."  (*Id.* at 14.)  Second, Plaintiff argues the ALJ relied on a "selective reading of the record," and

committed other errors, in assessing the opinions provided by Lydia Lutkoff, ANP and Hongbaio Liu, M.D.  (*Id.* at 19-22.)  Lastly, Plaintiff argues the medical opinion and administrative findings contradict the ALJ's RFC conclusion for medium work.  (*Id.*)  For the reasons outlined below, the ALJ properly evaluated the medical opinion and prior administrative findings and his determinations were supported by substantial evidence.

In assessing medical opinions and prior administrative medical findings, the ALJ must articulate how he or she considered certain factors.  *See* 20 C.F.R. § 416.920c(a)-(c)[2].  The regulatory factors are: (1) supportability, (2) consistency, (3) relationship with the plaintiff (which has five sub-factors of its own to consider), (4) specialization, and (5) other factors.  *Id.* § 416.920c(c).  An ALJ must explain his or her approach with respect to the first two factors when considering a medical opinion or finding but need not expound on the remaining three.  *Id.* § 416.920c(b).

The first factor, supportability, looks at how well a medical source supported and explained his or her opinion about a plaintiff. 20 C.F.R. § 416.920c(c)(1).  The strength of a medical opinion is increased as the relevance of the objective medical evidence and explanations increase.  *Id.*  The second factor, consistency, looks at whether a medical provider's findings and opinions are consistent with those of other medical providers and medical evidence.  *Id.* § 416.920c(c)(2).  The more consistent a particular medical source opinion is with other evidence in the medical record, the stronger that medical opinion becomes.  *Id.*

---

[2]        A prior administrative medical finding is a finding, other than the ultimate determination about whether a plaintiff is disabled, about a medical issue made by the SSA's Federal and State agency medical and psychological consultants at a prior level of review in a plaintiff's current claim based on their review of the evidence in plaintiff's case record.  20 C.F.R. § 416.913(a)(5).

### i.)   Non-examining State Agency Medical Consultant

Plaintiff argues the ALJ erred in his assessment of the administrative finding of non-examining State agency medical consultant, G. Feldman.  (Dkt. No. 10 at 15-16.) Plaintiff argues the finding was not based on a complete record, including subsequent opinions, and was contradicted by the opinion of Bridget Vaccaro, FNP, and consultative examiner David Brauer, M.D..  (*Id.* at 15-16.)  The ALJ properly assessed the finding of Dr. Feldman.

In general, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [plaintiff's own] medical sources."  20 C.F.R. § 416.920c(a).  All medical opinions and findings are evaluated for their persuasiveness and must be assessed under the same standard of supportability and consistency with no presumption that one opinion carries more weight than another.  *Hilton v. Kijakazi*, No. 20-CV-9318, -- F. Supp. 3d. ---, 2022 WL 1451476, at *4 (S.D.N.Y. May 9, 2022).

Even in claims filed before March 27, 2017, when the regulations recognized a hierarchy of source opinion, the Second Circuit upheld decisions where the ALJ afforded greater weight to a non-examining source over an examining source.  *See, e.g., Camille v. Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016) (holding that an ALJ was permitted to conclude that the assessment of a State agency consulting psychologist was more reliable than that of a treating psychiatrist); *Petrie v. Astrue*, 412 F. App'x 401, 405-06 (2d Cir. 2011) (affirming where treating source opinions were contradicted by evidence including the assessment of a State agency psychologist); *see also Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State Agency

medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").  Therefore, the ALJ did not commit *per se* legal error in finding the opinion of a non-examining source more persuasive than an examining source.

On July 31, 2017, non-examining State agency medical consultant G. Feldman, M.D., reviewed Plaintiff's record and provided an administrative finding.  (T. 70-73.)  Dr. Feldman opined Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds; stand and/or walk for a total of "about 6 hours in an 8-hours workday;" sit for a total of "about 6 hours in an 8-hour workday;" and push and/or pull unlimited other than shown for lift and/or carry.  (T. 71-72.)  Dr. Feldman indicated Plaintiff had no postural, manipulative, visual or communicative limitations.  (T. 72.)  He indicated Plaintiff had environment limitations and should avoid concentrated exposure to hazards.  (*Id.*)  Dr. Feldman outlined the evidence in the record he relied on in making his finding, including 2016 objective medical imagining and the 2016 consultative examination performed by Dr. Brauer.  (T. 72-73.)

The ALJ found Dr. Feldman's opinion "generally persuasive."  (T. 16.)  The ALJ reasoned the opinion was supported by analysis of the available evidence and was based on the doctor's experience and knowledge of Social Security programs.  (*Id.*)  The ALJ reasoned the opinion was "mostly consistent" with objective findings in the record "as a whole," which showed "mostly mild exam findings."  (*Id.*)  However, the ALJ concluded Plaintiff had further limitations in climbing and postural activities due to his subjective reports of ongoing abdominal pain.  (*Id.*)

Although Plaintiff argues Dr. Feldman's opinion was contradicted by other opinion evidence in the record, his argument fails because the ALJ properly assessed the opinion evidence and substantial evidence supported the ALJ's determinations.  On January 13, 2015, Nurse Vaccaro opined Plaintiff had moderate limitations in lifting, carrying, pushing, pulling, and bending, and could not lift over 20 pounds.  (T. 293.)  To be sure, Nurse Vaccaro's opinion that Plaintiff was limited to lifting no greater than 20 pounds is more restrictive than Dr. Feldman's opinion Plaintiff could lift and/or carry, at most, 50 pounds.  However, the ALJ properly found Nurse Vaccaro's opinion "not persuasive."  (T. 16.)

First, the ALJ reasoned her opinion was not supported by specific examination findings.  (T. 16.)  Indeed, Nurse Vaccaro completed a check box form, however she did not complete the sections asking for treatment history or current treatment programs.  (T. 293.)  There are no contemporaneous treatment notations from Nurse Vaccaro in the record.  Nurse Vaccaro did treat Plaintiff in May 2018 for complaints of a lump on his chest.  (T. 321.)  Plaintiff also presented her with a "form to complete for disability" and Nurse Vaccaro stated that "[b]ased on today's exam he doesn't appear disabled."  (T. 323.)  She further noted the form stated, "based on medical evidence" Plaintiff cannot work; however, she stated "[t]his 'evidence' isn't in this office therefore his form isn't being completed."  (*Id.*)  Overall, the ALJ properly articulated his consideration of the supportability of Nurse Vaccaro's opinion and substantial evidence supports the ALJ's determination.

Second, the ALJ concluded Nurse Vaccaro's lifting limitation was "not consistent with objective findings in the record as a whole, showing mostly mild exam findings.  (T.

16.)   Indeed, as outlined further herein, Dr. Brauer found normal findings on examination.  (T. 272-273.)  Dr. Brauer concluded, in part, Plaintiff had "mild to moderate" limitation in his ability to lift and/or carry "heavy objects."  (T. 273.) Therefore, the ALJ properly articulated his consideration of the consistency of Nurse Vaccaro's opinion and substantial evidence supports the ALJ's determination.

Plaintiff also argues Dr. Brauer's finding contradicted Dr. Feldman's finding.  (Dkt. No. 10 at 15-16.)  Plaintiff does not specifically state what portion of Dr. Brauer's finding contradicted Dr. Feldman's.  (*Id.*)  As outlined further herein, the ALJ properly assessed Dr. Brauer's administrative findings, and the doctor's findings were consistent with Dr. Feldman's findings and ultimately supported the RFC for medium work.

### ii.)   Consultative Examiner

Plaintiff makes the conclusory argument Dr. Brauer's opinion was "incomplete and stale."  (Dkt. No. 10 at 16.)  Plaintiff's argument fails, the ALJ properly assessed Dr. Brauer's administrative findings.

On July 24, 2017, Dr. Brauer performed a consultative examination and provided a medical source statement.  (T. 270-273.)  Dr. Brauer opined Plaintiff had no limitation in his ability to sit, stand, walk or climb stairs.  (T. 273.)  He further opined Plaintiff had "mild to moderate" limitation in his ability to "push, pull, lift, or carry heavy objects repetitively due to abdominal pain and history of hernias."  (*Id.*)

The ALJ concluded Dr. Brauer's findings were "persuasive in part."  (T. 16.)  The ALJ stated the doctor's opinion regarding Plaintiff's ability to sit, stand, walk or climb stairs was supported by the doctor's examination findings of full range of motion throughout the body.  (*Id.*)  The ALJ concluded Dr. Brauer's "mild to moderate"

limitations were "vague as to specific degree of limitations;" however, the ALJ noted an RFC for medium exertion was "consistent with the overall record." (*Id.*)

To be sure, as Plaintiff appears to argue, a moderate limitation in lifting and carrying may be found inconsistent with medium work. (Dkt. No. 10 at 22.)  Courts have found "moderate" limitations in exertional activities more consistent with the demands of light work. *See Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (concluding that opinions assessing only moderate limitations supported an RFC finding for light work); *see Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) (concluding that the ALJ's RFC finding was sufficiently supported by a consultative examiner's opinion assessing only some moderate limitations); *White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. 2019) (rejecting an argument that moderate limitations precluded an RFC finding for light work).

Although Dr. Brauer's opined limitations may be more consistent with the exertional demands of light work, the ALJ provided sufficient reasoning to support his assessment of Dr. Brauer's lifting and carrying limitations and his overall conclusion Plaintiff could perform medium work. (T. 16.)  First, unlike the cases cited above, Dr. Brauer opined Plaintiff had "mild to moderate" limitations in lifting/carrying "heavy objects repetitively." (T. 273.)  Further, Dr. Feldman considered Dr. Brauer's examination and administrative finding, together with other evidence in the record, in concluding Plaintiff could occasionally lift/carry up to 50 pounds and frequent lifting or carrying up to 25 pounds. (T. 71-73.)  Therefore, the ALJ's conclusion, an RFC for medium work was consistent with the overall record, was proper and supported by the opinions of Drs. Feldman and Brauer.

In so far as Plaintiff argues the opinions of Drs. Feldman and Brauer were incomplete and stale, Plaintiff's argument fails.  (Dkt. No. 10 at 16-17.)  To be sure, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding."  *Camille v. Colvin*, 104 F.Supp.3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016). Further, a medical opinion may be stale if it does not account for a plaintiff's deteriorating condition.  *See Carney v. Berryhill*, No. 16-CV-269, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017).  "However, a medical opinion is not necessarily stale simply based on its age."  *Biro v. Comm'r of Soc. Sec.,* 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018).  In addition, a consultative examiner is not required to obtain or review laboratory reports or treatment records.  *Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (the ALJ did not commit reversible error for relying on the opinion of a consultative examiner where the examiner did not review plaintiff's record, however he personally examined plaintiff and reached conclusions consistent with the objective medical evidence in the record).

Plaintiff argues Dr. Feldman did not have the benefit of reviewing subsequent opinion evidence from providers and testing.  (Dkt. No. 10 at 16.)  Although Dr. Feldman did not have medical source statements completed by other providers, the ALJ considered the record as a whole in assessing opinion evidence and administrative findings.  *See, e.g.*, *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 644 (2d Cir. 2020) (remand necessary where evidence in the record after the consultative examination directly contradicted the examination findings and the ALJ failed to discuss the evidence).  Overall, the administrative findings of Drs. Feldman and Brauer were

submitted during the relevant time period, and the ALJ considered all the evidence in the record in making his determinations.

### iii.)   Nurse Lutkoff and Dr. Liu

Plaintiff argues, "the medical opinions of Ms. Lutkoff and Dr. Liu are well-supported and consistent with the record, so it was improper for the ALJ to diminish opinions and rely on incomplete and inconsistent opinion in RFC findings." (Dkt. No. 10 at 19-20.)  Plaintiff argues the ALJ improperly "diminished" the opinions of Nurse Lutkoff and Dr. Liu based on Plaintiff's subjective complaints and a mischaracterization of the record. (*Id.* at 20.)  For the reasons outlined below, the ALJ properly assessed the opinions of Nurse Lutkoff and Dr. Liu.

On November 14, 2017, Dr. Liu examined Plaintiff and completed and employability form for Erie County Department of Social Services ("DSS"). (T. 277-281.)[3]  Dr. Liu indicated Plaintiff was moderately limited (2-4hours) in walking, standing, sitting, pushing, pulling, bending, climbing, and ability to use public transportation. (T. 279.)  Dr. Liu indicated Plaintiff could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. (*Id.*)  Dr. Liu indicated Plaintiff was unable to participate in any activities except treatment or rehabilitation for six months. (T. 280.)  When asked if Plaintiff was "unable to work for more than 6 months due to his/her medical condition," Dr. Liu answered "no." (*Id.*)

On August 9, 2018, Dr. Liu completed another form for DSS. (T. 282-286.)  Dr. Liu indicated Plaintiff was moderately limited (2-4hours) in walking, standing, sitting, pushing, pulling, bending, climbing, and ability to use public transportation. (T. 284.)

---

[3]         Dr. Liu indicated Plaintiff reported diagnosis of arthritis. (T. 277.)

Dr. Liu indicated Plaintiff could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds.  (*Id.*)  Dr. Liu indicated Plaintiff was able to participate in activities such as work for up to 40 hours.  (*Id.*)  When asked if Plaintiff was "unable to work for more than 6 months due to his/her medical condition," Dr. Liu answered "no."  (T. 285.)

The ALJ concluded Dr. Liu's opinions were "not persuasive."  (T. 17.)  The ALJ concluded the opined limitations were not supported by the overall record, because the limitations were temporary.  (*Id.*)  Lastly, the ALJ the opinion appeared to be based on Plaintiff's subjective complaints and was inconsistent with the record as a whole, showing mostly mild exam findings.  (*Id.*)

Plaintiff argues the ALJ erred in discounting Dr. Liu's opinion based on Plaintiff's subjective complaints.  (Dkt. No. 10 at 20.)  Plaintiff's argument fails.  In evaluating an opinion, the ALJ may take into consideration whether a source based opined limitations on a plaintiff's subjective complaints.  *See Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012); *see Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (holding that the ALJ properly elected not to adopt many of the consultative examiner's conclusions, which were unsupported and inconsistent with other record evidence); *see also Reilly v. Comm'r of Soc. Sec.*, No. 21-8-CV, 2022 WL 803316, at *2 (2d Cir. Mar. 17, 2022) (the ALJ properly afforded opinion only "partial weight," reasoning the opinion was not consistent with the record as a whole, that it was not supported with an explanation, that it was not supported by medical evidence in the record, and that it was based on plaintiff's subjective reports).

Further, contrary to Plaintiff's assertion, the ALJ did not err in discounting Dr. Liu's opinion due to his statements that the limitations were temporary. (Dkt. No. 10 at

21); *see Diaz-Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 305 (W.D.N.Y. 2018) (ALJ properly declined to credit portions of doctor's assessments where doctor opined the limitations were expected to last three to six months); *see Michele B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00975, 2021 WL 5543940, at *4 (W.D.N.Y. Nov. 27, 2021) (ALJ did not err in concluding an opinion was temporary and in conflict with plaintiff's overall abilities based on the information contained the record).  Overall, the ALJ properly evaluated Dr. Liu's opined limitations.

The ALJ also properly assessed the assessment forms completed by Nurse Lutkoff.  On May 15, 2019, Nurse Lutkoff completed an employability assessment form for New York State.  (T. 288-289.)  When asked the reason for referral, Nurse Lutkoff wrote "client states that he is not able to work at this time due to medical issues."  (T. 288.)  She indicated Plaintiff's medical conditions consisted of hernia and his prognosis was "good."  (*Id.*)  Regarding functional limitations, Nurse Lutkoff indicated there was "no evidence of limitations" in Plaintiff's ability to walk, stand, sit, see, hear, speak, or use hands.  (*Id.*)[4]  She indicated Plaintiff was "moderately limited" in his ability to lift, carry, push, pull, and bend.  (*Id.*)

The ALJ found Nurse Lutkoff's opinion "persuasive in part."  (T. 16.)  The ALJ concluded the physical limitations provided by the nurse were not supported because her opinion did not provide any significant supporting analysis with reference to specific examination findings.  (T. 17.)  The ALJ concluded the nurse's opinion of Plaintiff physical limitations was "not persuasive."  (*Id.*)  He reasoned the record indicated

---

[4]      The form contained the following three options: no evidence of limitations, moderately limited, and very limited.  (T. 289.)

"mostly mild findings on examination" and the opinion was "vague as to the specific degree of these limitations." (*Id.*)  As already outlined herein, Dr. Brauer's examination contained mild findings.  Further, as outlined below, the record provided by Northwest contained mild examination findings.

Nurse Lutkoff, and other sources at Northwest, provided Plaintiff's primary care. On November 13, 2018, Plaintiff presented to Northwest with complaints of chest pain. (T. 312.)  Nurse Lutkoff noted Plaintiff had a stress test which was negative for ischemia, Plaintiff had "new LBBB [left bundle branch block]," an abnormal EKG, a normal echocardiogram, and was referred to a cardiologist.  (T. 312.)  Plaintiff reported fatigue and cough.  (T. 314.)  He was prescribed an antibiotic.  (*Id.*)  In November 2018, Nurse Lutkoff noted Plaintiff was "feeling well" with "no complaints."  (T. 308.)  He presented with no musculoskeletal, neurological, psychiatric or endocrine symptoms. (T. 310.)  His physical exam showed no abnormalities.  (*Id.*)  Nurse Lutkoff again noted Plaintiff had a stress test which was negative for ischemia, Plaintiff had "new LBBB," an abnormal EKG, a normal echocardiogram, and was referred to cardiologist Dr. Forte. (T. 311.)

In January 2019, Plaintiff presented to Northwest "demanding a note" for his housing facility.  (T. 303.)  Jon Kucera, M.D. noted Plaintiff was recently seen by Dr. Forte and diagnosed with "LBBB and hypertensive heard disease without [congestive heart failure]."  (*Id.*)  Dr. Kucera noted he informed Plaintiff he had "no cardiac disability."  (T. 306.)  In March 2019, Plaintiff presented to Nurse Lutkoff for ongoing management of his hypertension.  (T. 299.)  He presented with no musculoskeletal, neurological, psychiatric or endocrine symptoms.  (T. 300.)  His physical exam showed

no abnormalities.  (T. 301.)  In June 2019, Plaintiff presented to Northwest to follow up

on his hypertension.  (T. 294.)  He presented with no musculoskeletal, neurological,

psychiatric or endocrine symptoms.  (T. 296.)  Physical exam showed no abnormalities.

(T. 297.)  Therefore, substantial evidence in the record supports the ALJ's determination

that opined limitations were inconsistent with objective findings.

Overall, contrary to Plaintiff's assertions, the ALJ properly evaluated the opinions

provided by Dr. Liu and Nurse Lutkoff and the ALJ's determinations were supported by

substantial evidence in the record.

### B.  RFC for Medium Work

Plaintiff argues, the record contradicts the RFC for medium work and the ALJ

used improper selective reading in evaluating Plaintiff's conditions, medical opinions,

and evidence, as well as Plaintiff's testimony to reach his conclusion.  (Dkt. No. 10 at

22.)  For the reasons outlined below, the ALJ properly assessed Plaintiff's RFC and his

determination was supported by substantial evidence.

The RFC is an assessment of "the most [Plaintiff] can still do despite [his]

limitations."  20 C.F.R. § 416.945(a)(1).  An RFC finding is administrative in nature, not

medical, and its determination is within the province of the ALJ.  *Id.* § 416.945(a)(1)

("We will assess your residual functional capacity based on all the relevant evidence in

your case record."), *see id.* § 416.946(c) ("the administrative law judge or the

administrative appeals judge at the Appeals Council . . . is responsible for assessing

your residual functional capacity").  Additionally, the regulations direct an ALJ to "not

defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." *Id.* § 416.920c.

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position.  Substantial evidence "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

To be sure, as outlined by Plaintiff, medical opinion evidence in the record supports greater exertional limitations than provided for by the ALJ in his RFC determination.  However, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve."  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Courts must "defer to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); *see also Jones v. Sullivan,* 949

F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Here, the ALJ assessed the persuasiveness of the medical opinion and administrative findings in the record and articulated reasons to support his findings. Although Plaintiff cites evidence that supports his conclusion of greater exertional limitations, substantial evidence in the record supports the ALJ's determination Plaintiff could perform the exertional demands of medium work.  The Court cannot set aside the Commissioner's disability determination unless it finds that the decision is based on either legal error or factual findings that are unsupported by substantial evidence.  The "substantial evidence" standard "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek*, 139 S. Ct. at 1154.  Therefore, the ALJ's determination is upheld.

### C.  Subjective Complaints

Lastly, Plaintiff argues the ALJ's evaluation of Plaintiff's "credibility was improperly conclusory and he failed to consider various factors, like modification of activities, cognitive impairments, assistance from others, etc."  (Dkt. No. 10 at 26.)[5] Here, the ALJ properly assessed Plaintiff's reported symptoms and his determination was supported by substantial evidence.

In general, the ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms.  *See* 20 C.F.R. § 416.929.  First, the ALJ must determine whether,

---

[5]      On March 28, 2016, SSR 16-3p superseded SSR 96-7p and eliminated the use of the term "credibility" as the regulations do not use the term.  SSR 16-3P (S.S.A. Mar. 16, 2016) ("we are eliminating the use of the term 'credibility' from our sub-regulatory poly, as our regulations do not use this term").

based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* § 416.929(a).  Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) plaintiff's daily activities; (2) the location, duration, frequency, and intensity of plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication plaintiff takes or has taken to relieve his pain or other symptoms; (5) other treatment plaintiff receives or has received to relieve his pain or other symptoms; (6) any measures that plaintiff takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. § 416.929(c)(3)(i)-(vii).

Here, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (T. 14.)

In making his determination, the ALJ properly considered the factors outlined in 20 C.F.R. § 416.929(c).  The ALJ considered Plaintiff's daily activities, noting that Plaintiff cooked, cleaned, did laundry, shopped, watch television, listened to the radio, and socialized with friends, while also noting that Plaintiff testified to some difficulties like sleeping on his left side and lifting or carrying heavy weights.  (T. 14-15 (referring to

T. 42-47, 271); *see* 20 C.F.R. § 416.929(c)(3)(i)).  The ALJ considered the location, duration, frequency, and intensity of Plaintiff's symptoms and precipitating or aggravating factors, including that Plaintiff testified to having difficulty standing or walking for extended periods and sometimes squatted down to reduce pressure in his lower back.  (T. 14-15); *see* 20 C.F.R. § 416.929(c)(3)(ii)-(iii).

In addition, the ALJ considered Plaintiff's treatment for his symptoms and found it generally did not corroborate Plaintiff's allegations of disability.  (T. 15.)  The ALJ noted Plaintiff treated post-femur surgery right leg and hip pain and postinguinal and umbilical hernia pain only with ibuprofen.  (*Id.*)  Despite believing that his hernias had returned, Plaintiff told the consultative examiner he had not sought further treatment for them. (*Id.*)  The ALJ also noted Plaintiff had a hernia surgery scheduled but cancelled due to heart attack symptoms, left the hospital against medical advice and did not return for treatment of his hernia.  (T. 15-16.)  Plaintiff reported no treatment for mental health issues.  (T. 15.)  Therefore, the ALJ properly summarized Plaintiff's history of mild treatment and failure to seek further medical assistance for his medical impairments. *See Arnone v. Brown*, 882 F.2d 34, 39 (2d Cir. 1989) (a claimant's failure to seek treatment significantly undermines a claim of disability).  In sum, the ALJ properly assessed Plaintiff's subjective complaints using the factors outlined in 20 C.F.R. § 416.929(c) and the ALJ's determination was supported by substantial evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:        August 31, 2022

William B. Mitchell Carter
U.S. Magistrate Judge